**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DONALD B. WALTZ, ) | CASE NO. 5:11-cv-2272 |
| ) | |
| Plaintiff, ) | JUDGE NUGENT |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| MICHAEL J. ASTRUE, ) | |
|    Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Donald B. Waltz ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. PROCEDURAL HISTORY

On April 7, 2008, Plaintiff filed applications for a POD, DIB, and SSI and alleged

a disability onset date of March 17, 2008. (Tr. 9.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 9.) On July 20, 2010, an ALJ held Plaintiff's hearing by video conference. (Tr. 9.) Plaintiff participated in the hearing, was represented by counsel, and testified. (Tr. 9.) A vocational expert ("VE") also appeared and testified. (Tr. 9.) On March 25, 2011, the ALJ found Plaintiff not disabled. (Tr. 19.) On September 16, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On October 24, 2011, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On February 20, 2012, Plaintiff filed his Brief on the Merits. (Doc. No. 12.) On April 25, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 14.) Plaintiff did not file a brief in reply.

Plaintiff asserts several "legal issues" but essentially argues only one assignment of error: the ALJ's reasons for giving the opinions of Plaintiff's treating source, Dr. Ahmed, less than controlling weight are inadequate.[1]

---

[1] Plaintiff also asserts in his "Background" section, without any legal argument or explanation, that "the ALJ substituted her opinion of the claimant's medical condition without deferring to an outside medical examination for input." (Pl.'s Br. 4.) Plaintiff is represented by counsel. Plaintiff's counsel is reminded that the Magistrate Judge's Initial Order in this case directs the parties to label the section of their briefs regarding relevant facts as the "Facts" section, and that it is not appropriate to present legal arguments in that section. (*See* Doc. No. 6.) Plaintiff's counsel is expected to comply with the Court's orders in the future. Additionally, absent any apparent effort at developing this argument, it is deemed waived. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 37 years old on his alleged disability onset date. (Tr. 17.) He had at least a high school education and was able to communicate in English. (Tr. 17.) He had past relevant work experience as a pipe worker and mold operator. (Tr. 17.)

### B. Medical Evidence

On April 5, 2008, Plaintiff presented to the hospital emergency department with complaints of abdominal pain and nausea. (Tr. 232, 248.) Dr. Rimon Daoud, M.D., attended to Plaintiff and indicated the following. (*See* Tr. 232.) Plaintiff was diagnosed with ketoacidosis, diabetes type I, hyperlipidemia, hypertension, electrolyte disturbance, and cellutitis. (Tr. 232.) Plaintiff reported that he had self-managed his diabetes for the previous 20 years with over-the-counter insulin. (Tr. 232, 236.)

On April 7, 2008, Plaintiff underwent a consultative physical examination with Dr. Blair T. Holder, M.D., upon referral from Dr. Daoud. (Tr. 248-49.) Upon examination, Dr. Holder indicated that Plaintiff was ambulatory and had a normal gait. (Tr. 248.) On April 8, 2008, Plaintiff was discharged from the hospital in stable condition and was instructed to receive medical care for his diabetes. (Tr. 232.)

On May 7, 2008, Dr. Daoud completed a medical source statement and indicated the following. (Tr. 257-59.) Plaintiff suffered insulin-dependent diabetes. (Tr. 258.) His symptoms included recurrent hypoglycemic and hyperglycemic episodes accompanied by dizziness, blurred vision, fatigue, headaches, and abdominal pain. (Tr. 258.) His condition improved with insulin treatment. (Tr. 259.) Dr. Daoud opined that

3

Plaintiff must not operate heavy machinery. (Tr. 259.)

On July 14, 2008, state agency reviewing physician Myung Cho, M.D., assessed Plaintiff's physical residual functional capacity ("RFC") and indicated the following. (Tr. 273-80.) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for approximately 6 hours in an 8-hour workday with normal breaks. (Tr. 274.) His abilities to push and pull were not limited except to the extent he was limited in lifting and carrying. (Tr. 274.) He could never balance (Tr. 275), and he should avoid all exposure to hazards such as machinery and heights (Tr. 277). He had no manipulative, visual, or communicative limitations. (Tr. 276-77.) Dr. Cho concluded that Plaintiff's statements of the nature of his symptoms and limitations were credible but his statements of their severity were not credible; although Plaintiff alleged neuropathy, there was no diagnosis of neuropathy in the record. (Tr. 278.)

On October 7, 2008, Plaintiff presented to Dr. Maaz Ahmed, M.D., to establish a treatment relationship to manage his diabetes. (Tr. 375.) Dr. Ahmed indicated the following. Plaintiff reported neuropathic symptoms in both lower extremities, and that he had poor control of his diabetes until April of that year when he presented to the hospital emergency department. (Tr. 375.) A review of Plaintiff's systems was "noncontributory," and the physical examination of Plaintiff's central nervous system was "grossly nonfocal." (Tr. 375.) Dr. Ahmed diagnosed Plaintiff with painful diabetic neuropathy, and type I diabetes mellitus that was improved and controlled with an "extremely difficult insulin regimen." (Tr. 376.) Dr. Ahmed gave Plaintiff Lyrica and insulin. (Tr. 376.)

On October 21, 2008, Plaintiff returned to Dr. Ahmed for a follow-up

examination. (Tr. 374-75.) Dr. Ahmed indicated that Plaintiff reported he had not taken his medication as advised. (Tr. 374.) Dr. Ahmed's review of Plaintiff's systems was "noncontributory"; and Dr. Ahmed's notes of his physical examination were few and unremarkable. (Tr. 374.)

On November 24, 2008, Plaintiff presented to Dr. Ahmed for a follow-up examination. (Tr. 372.) Dr. Ahmed indicated that Plaintiff reported he had not been eating well and decided he was willing to make changes to his diabetic treatment because he was worried about dying. (Tr. 372.)

On January 5, 2009, Dr. Ahmed authored an assessment of Plaintiff's RFC based on the effects of Plaintiff's diabetes mellitus. (Tr. 425-28.) Dr. Ahmed indicated the following. Plaintiff presented to Dr. Ahmed every two or three weeks for the last three months. (Tr. 425.) Plaintiff's symptoms included fatigue; difficultly walking; blurred vision; sensitivity to light, heat, and cold; muscle weakness; frequent urination; and headaches. (Tr. 425.) Plaintiff could rarely lift and carry 10 pounds in a competitive work environment; rarely twist, crouch, squat, and climb stairs; occasionally stoop; and never climb ladders. (Tr. 427.) He could walk one half of a block; sit for 30 minutes before he needed to stand; stand for 20 minutes before he needed to sit; and sit, stand, and walk for less than 2 hours in an 8-hour workday. (Tr. 426.) He required the opportunity to shift positions among sitting, standing, and walking at-will throughout the workday. (Tr. 426.) He also required the opportunity to take one-hour, unscheduled breaks during the workday two or three times a week. (Tr. 427.)

Plaintiff was not restricted from exposure to cigarette smoke, perfumes, solvents, and cleaners; should avoid concentrate exposure to fumes, odors, gases, and dust;

5

should avoid even moderate exposure to wetness, soldering fumes, and chemicals; and should avoid all exposure to extreme heat and cold and high humidity.  (Tr. 428.)  He was able to tolerate moderate work stress, but his symptoms were severe enough to interfere frequently with his ability to maintain attention and concentration as needed to perform even simple work tasks.  (Tr. 426.)  He could be expected to be absent from work more than four times a month because of his impairments (Tr. 428), and his impairments could be expected to last for at least 12 months.  (Tr. 425.)  His prognosis, however, was "good."  (Tr. 425.)  Dr. Ahmed indicated that his findings were based on his recent office notes.  (Tr. 425.)

On June 1, 2009, Plaintiff presented to Dr. Arvind Krishna, M.D., for "endocrine input" regarding Plaintiff's diabetes.  (Tr. 401.)  Dr. Krishna noted that Plaintiff's blood sugar levels were high in the early morning hours, so he recommend adjusting Plaintiff's insulin dosage and timing.  (Tr. 401.)  Dr. Krishna also recommended more convenient methods of insulin delivery for Plaintiff, as Plaintiff complained that he had to return home to take his daily insulin injections.  (Tr. 401.)

On June 9, 2009, Plaintiff presented to Dr. Ahmed for a follow-up examination.  (Tr. 450.)  Dr. Ahmed indicated that Plaintiff reported his blood sugar levels remained elevated and he began presenting to Dr. Krishna; and that he did not have further hypoglycemic episodes since Dr. Krishna adjusted his insulin dosages and schedule.  (*See* Tr. 450.)  Dr. Ahmed diagnosed Plaintiff with type I diabetes mellitus with brittle control, and he recommended that Plaintiff continue his current insulin regimen and follow up with Dr. Krishna for diabetic management.  (Tr. 450.)

On August 25, 2009, Plaintiff presented to Dr. Ahmed for a follow-up

6

examination. (Tr. 449.)  Dr. Ahmed indicated that Plaintiff continued to complain of fluctuating blood sugar levels and numbness and burning in his feet. (Tr. 449.)  Dr. Ahmed started Plaintiff on Imipramine to help his neuropathy. (Tr. 449.)

On January 26, 2010, Plaintiff presented to Dr. Ahmed for a follow-up examination, and Dr. Ahmed indicated that Plaintiff "is doing fairly well regarding his diabetes" and "has had no further hypoglycemic episodes." (Tr. 448.)

On April 27, 2010, Plaintiff presented to Dr. Ahmed for a follow-up examination, and Dr. Ahmed indicated the following. (Tr. 440.)  Plaintiff's "[c]ondition has been mostly well controlled." (Tr. 440.)  Plaintiff denied signs and symptoms associated with his diabetes and reported he was not taking his prescribed medications, was "[m]ostly compliant with [his] diet plan," and "ha[d] no foot problems." (Tr. 440.)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

Plaintiff testified at his hearing as follows.  Plaintiff had pain and numbness in both feet and legs, but his "biggest issue is the uncontrollable diabetes." (Tr. 31.)  He checked his blood sugar levels seven or eight times a day, administered three shots a day, and counted his carbohydrate intake. (Tr. 31-32.)  When his blood sugar level became low, he felt "absolutely horrible," had trouble concentrating, and had vision problems. (Tr. 36, 45.)  He did not suffer side effects from his medications. (Tr. 35-36.)

Because of Plaintiff's leg and foot pain, Plaintiff could walk only one block and stand for 15 minutes before he needed to stop and sit. (Tr. 32-33, 50.)  He could sit for 15 to 20 minutes before he needed to stand and move. (Tr. 33.)  He could lift 10

pounds, but his leg and foot pain prevented him from carrying that amount of weight for long periods. (Tr. 34.) He very rarely used a cane and was never prescribed one. (Tr. 34.)

During a typical day, Plaintiff read the newspaper, watched television, ate meals, visited friends, and tried helping his mother clean their home. (Tr. 39-40.) He had a driver's license and drove short distances every day. (Tr. 30-31.) He went grocery shopping once a month and regularly drove to the post office. (Tr. 30-31, 40.)

### 2.     Vocational Expert's Hearing Testimony

The ALJ posed the following hypothetical to the VE:

> The first concerns an individual of the claimant's age, education and past relevant work experience . . . . [T]his individual can lift up to five pounds frequently and 10 pounds occasionally. They [sic] can sit six hours in the course of an eight-hour day and stand and/or walk two hours, each during the course of an eight-hour day. This individual should not climb ladder[s,] ropes or scaffolds. Can occasionally climb ramps and stairs. Cannot work around hazards such as unprotected heights or dangerous machinery and should not perform any occupational driving.

(Tr. 54.) The ALJ believed Plaintiff's past relevant work was already eliminated; and the VE testified that such a person could perform other work as a food and beverage order clerk (for which there were 4,000 jobs in the state and 400,000 jobs in the nation), charge account clerk (for which there were 80,000 jobs in the state and 160,000 jobs in the nation), and telephone answering service clerk (for which there were 6,000 jobs in the state and 150,000 jobs in the nation). (Tr. 54-55.)

For the second hypothetical, the ALJ added "the further limitation that such an individual should only occasionally operate foot controls." (Tr. 55.) The VE testified that such an individual could still perform the work to which he testified. (Tr. 55.)

8

The ALJ posed a third hypothetical:

> I want to add the further limitation that such an individual should be allowed to alter position between sitting and standing as required for comfort. They [sic] would be off task a minute or two while they [sic] changed positions. Assuming this hypothetical, they [sic] would change position once per hour.

(Tr. 55.) The VE testified that such a person could still perform the jobs to which he testified. (Tr. 55.)

The ALJ posed a fourth hypothetical "to add the further limitation that as a result of symptoms such as fatigue and pain, such an individual would be off task 20 percent of the time or more." (Tr. 56.) The VE testified that "there would be no competitive unskilled jobs" for such an individual. (Tr. 56.)

The ALJ posed a fifth hypothetical and asked: "if instead of being off task 20 percent of the time as a result of symptoms, such an individual would miss two or more days of work per month[, w]ould there still be any jobs for such an individual?" (Tr. 56.) The VE responded that there would not be any jobs for such an individual. (Tr. 56.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and*

9

416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)*,* 404.1560(c)*, and* 416.920(g).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 17, 2008, the alleged onset date.

3. The claimant has the following severe impairments: brittle type I diabetes mellitus, diabetic peripheral neuropathy, gastroesophageal reflux disorder[,] and hypertension.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work . . . except the claimant cannot climb ladders, ropes or scaffolds, but can occasionally climb stairs and ramps; he can occasionally operate foot controls; he is precluded from occupational driving and must avoid all exposure to hazards.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 17, 2008, through the date of this decision.

(Tr. 11-18.)

### V. LAW & ANALYSIS

#### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512

11

(6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Assessment of Dr. Ahmed's Opinions

Dr. Ahmed's January 5, 2009, opinions support the conclusion that Plaintiff is more limited than the ALJ found. The ALJ gave Dr. Ahmed's January 5, 2009, opinions "less than full weight as they are inconsistent with the objective medical evidence, including Dr. Ahmed's own treatment notes, and appear to give greater weight to [Plaintiff's] subjective complaints than objective medical evidence." (Tr. 16.) The ALJ continued to explain that "Dr. Ahmed's treatment notes include essentially normal

physical examinations of [Plaintiff] in October 2008 and April 2010." (Tr. 16.) Plaintiff contends that the ALJ's reasons for giving Dr. Ahmed's January 5, 2009, opinions less than controlling weight are inadequate because, pursuant to *Friend v. Commissioner of Social Security*, 375 F. App'x 543 (6th Cir. 2010), she was required to explain precisely which of Dr. Ahmed's findings were "normal" and how they were inconsistent with the January 2009 opinions.[2] For the following reasons, this assignment of error is not well taken.

*Friend* is distinguishable. In *Friend*, the claimant's treating physician opined that the claimant could stand or walk only one hour per eight-hour workday, and the medical expert at the claimant's hearing opined that the claimant could stand and/or walk for an hour at a time six times per eight-hour work day. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 547-48 (6th Cir. 2010). The ALJ gave more weight to the medical expert's opinion, and his explanation for doing so was solely as follows:

> [T]he testimony of [the medical expert], which would allow the claimant to stand/walk for one hour [at a] time to a total of six hours in an eight hour workday, is more consistent with the objective clinical findings, and there is no basis for [the treating source's] conclusion that the claimant can stand/walk for only one hour in a day.

*Id.* at 551 (internal quotes omitted). The Sixth Circuit explained that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record;

---

[2] Plaintiff also states that the "ALJ fails to develop a full and fair record as to Dr. Ahmed's opinion." (Pl.'s Br. 7.) It appears Plaintiff is conflating two separate legal issues: whether the ALJ developed a full and fair record, and whether the ALJ properly and adequately assessed a treating source's opinions. To the extent Plaintiff might have intended to argue that the ALJ failed to develop a full and fair record beyond the issue of the treating source's opinions, such an argument is waived, as it has been presented in a perfunctory manner without any legal argument and explanation. *See Rice*, 169 F. App'x at 454.

13

there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Id.* at 552. Here, the ALJ's opinion is not merely conclusory; the ALJ made an effort to explain her rationale. Plaintiff does not cite any other case law that would require the ALJ to explain her assessment in greater detail, and the Court is not aware of any.

Furthermore, the ALJ's assessment of Dr. Ahmed's opinions is supported by substantial evidence. A treating source's opinion may be given less than controlling weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). Dr. Ahmed's physical findings upon examination in October 2008 were, indeed, unremarkable; and on April 27, 2010, Dr. Ahmed indicated that Plaintiff reported his diabetes was "mostly well controlled" and that he was not suffering any complications from his diabetes. The ALJ reasonably concluded that Dr. Ahmed's January 2009 opinions were unsupported by his treatment notes from before and after he rendered those opinions, as well as by the other evidence in the record. Accordingly, this assignment of error is not well taken.

## VI.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                                      s/ *Nancy A. Vecchiarelli*
                                                      U.S. Magistrate Judge

Date:  July 13, 2012

## **OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the**

**Clerk of Courts within fourteen (14) days of this notice.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**